UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ALISTAIR GOODMAN, NICHOLAS,          :          NO.: 3:01CV1609 (GLG)
GOODMAN AND JAMES FENNER,            :
EXECUTOR OF THE ESTATE OF           :
MARILYN B. FENNER,                   :
    Plaintiffs                       :

v.                                   :

TOWN OF FARMINGTON BOARD             :
OF EDUCATION,                        :
    Defendant                        :          MARCH 12, 2004

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u><br><u>MOTION FOR SUMMARY JUDGMENT</u>

**I.**     <u>BACKGROUND</u>:

      The plaintiffs have brought a four-count amended complaint, dated November

26, 2001, against the defendant, Town of Farmington Board of Education.  In count

one, the plaintiffs allege that the Board of Education breached the Collective

Bargaining Agreement.  <u>See</u> Amended Complaint, First Count, ¶7.  In count two, the

plaintiffs allege that the Board of Education violated Gen. Stat. §46a-60(a)(1) by

terminating Marilyn B. Fenner's term life insurance coverage.  <u>See</u> Amended

Complaint, Second Count ¶17.  In the third count, the plaintiffs allege that the Board

terminated Marilyn B. Fenner's term life insurance coverage in violation of the Family

Medical Leave Act.  <u>See</u> Amended Complaint, Third Count, ¶15.  The fourth count is

directed to defendant Kevin Deneen.  <u>See</u> Amended Complaint, Fourth Count, ¶¶2, 11.  The defendant hereby moves for a summary judgment as to the three counts directed against it.

The plaintiffs' decedent, Marilyn Fenner, was hired by the Farmington Board of Education  in 1992.  <u>See</u> Group Enrollment Form, attached as **Exhibit A**.  She was hired as principal of the West District School.  <u>See</u> deposition transcript of James Fenner, pp. 38, 40, attached as **Exhibit B**.  As a principal, Dr. Fenner was a beneficiary of the Collective Bargaining Agreement between the Board of Education and the Farmington Administrators' and Supervisors' Association.  <u>See</u> Amended Complaint, First Count, ¶2.  Pursuant to the terms of the Collective Bargaining Agreement, the Farmington Board of Education agreed to "provide administrators with life insurance at an amount equal to two times the administrators' salary."  <u>See</u> Amended Complaint, First Count, ¶3; and Collective Bargaining Agreement, Article V, §B(a), attached as **Exhibit C**.

The Collective Bargaining Agreement also sets forth a grievance procedure for disgruntled administrators.  <u>See</u> **Exhibit C**.  A grievance is defined as "a complaint by an administrator that there has been a violation, misinterpretation or misapplication of a specific provision of this agreement and shall be subject to the grievance procedure and may be processed to arbitration (Level Four)."  <u>See</u> **Exhibit C**., Article VIII, §A(1). The grievance procedure requires that an administrator first discuss her grievance with

her immediate supervisor within five days after the incident in an effort to resolve the problem informally.  <u>See</u> **Exhibit C**, Article VIII, §E.  If the administrator is not satisfied with the outcome of the informal procedure, she may present her claim to her immediate supervisor as a written grievance.  <u>See</u> **Exhibit C**, Article VIII, §F(1).  If the administrator remains dissatisfied, she may within five (5) days after the supervisor's decision, file an appeal in writing to the superintendent.  <u>See</u> **Exhibit C**, Article VIII, §F(2).  The administrator's next step is to file a written grievance with the Chairman of the Board of Education within five (5) days after the superintendent's decision.  <u>See</u> **Exhibit C**, Article VIII, §F(3).  Finally, if the administrator is not satisfied with the disposition of her grievance at Level Three, she may within three (3) days after receipt of the decision, request in writing to the Association that the grievance be submitted to binding arbitration.  <u>See</u> **Exhibit C**, Article VIII, §F(4).  "If an administrator does not file a grievance in writing within fifteen (15) calendar days after she/he first knew of the act or condition on which the grievance is based, then the grievance shall be considered to have been waived."  <u>See</u> **Exhibit C**, Article VIII, §C.

Marilyn Fenner enrolled for group life insurance coverage with Sun Life Insurance Company of Canada on August 31, 1999.  <u>See</u> **Exhibit A**.  The life insurance policy specifically stated that insurance would cease on the date the employee retired, the date the employee's employment terminated and/or the date the employee ceased to be Actively at Work.  <u>See</u> Sun Life Insurance Policy, p. 7,

attached as **Exhibit D**.  The term "Actively at Work" is defined in the policy as follows:

> **Actively at Work** means that you perform all the regular duties of your job for a full work day scheduled by your Employer at your Employer's normal place of business or a site where your Employer's business requires you to travel.
>
> You are considered Actively at Work on any day that is not your regularly scheduled work day (ie., you are on vacation, layoff, or on approved leave of absence) as long as you:
> - are not hospital confined; or
> - are not disabled due to an injury or sickness; and
> - were Actively at Work on your immediately preceding scheduled
>   work day.
>
> You are considered Actively at Work if you usually perform the regular duties of your job at your home as long as you:
> - are not hospital confined; or
> - are not disabled due to an injury or sickness; and
> - can perform all of the regular duties of your job for a full work day
>   and can do so at your Employer's normal place of business, if
>   required.

See **Exhibit D**, p. 28.

Marilyn Fenner was diagnosed with terminal cancer in November 1999.  See **Exhibit B**, p. 81.  Dr. Fenner's doctor advised her that her average life expectancy was less than one year, assuming she had surgery, radiation and chemotherapy.  See **Exhibit B**, pp. 81-82, 96.  Between Thanksgiving and early December 1999, Marilyn Fenner informed Dr. Robert Villanova, Superintendent of Schools, that she required surgery for a brain tumor.  See **Exhibit B**, p. 97.  She underwent surgery in December 1999 and was able to return to work in January.  See **Exhibit B**, pp. 97-98.  In February 2000, however, she announced that she would not be returning as principal

4

the following school year.  See **Exhibit B**, pp. 71-73, 101; and Fenner letter dated

February 29, 2000, attached as **Exhibit E**.  She notified the faculty in person and

wrote a letter to the parents and community advising them that this was her last year

as principal.  See **Exhibit B**, pp 71-73, 101; and **Exhibit E**.  Dr. Fenner knew that she

was unable to serve as principal in her current condition.  See **Exhibit B**, pp. 37-38.

On March 3, 2000, Dr. Villanova notified the Board of Education that Dr. Fenner

intended to retire effective June 30, 2000.  See Weekend Update Memorandum, dated

March 3, 2000, attached as **Exhibit F**.  At a March 13, 2000 Board meeting, Dr.

Villanova addressed the selection process and timeline for the appointment of a new

principal for West District School.  See Selection Process and Timeline, attached as

**Exhibit G**.

On June 13, 2000, the personnel supervisor for Farmington Public Schools

wrote Dr. Fenner congratulating her on her upcoming retirement and advising her of

her obligation to make the premium payments for her health insurance.  See Barret

letter, attached as **Exhibit H**.  After July 1, 2000, Mr. Fenner began making payments

for health insurance in the amount of $394.67 a month on his wife's behalf.  See

**Exhibit B**, pp. 42-43.  The remainder of the insurance premium was paid by the

Teachers' Retirement Board.  See **Exhibit B**, pp. 44-45.

On June 22, 2000, Marilyn Fenner applied for disability benefits from the State

of Connecticut Teachers' Retirement Board.  See Amended Complaint, First Count,

¶9; and Application for Disability Allowance, attached as **Exhibit I**.  Dr. Villanova

provided a statement in support of her application.  Dr. Villanova stated, in pertinent

part, that Dr. Fenner "will retire from her position as West District School Principal on

June 30, 2000."  See Amended Complaint, Second Count, ¶10; and **Exhibit I**.

Dr. Fenner was approved for, and received, disability pay from the State of

Connecticut.  See **Exhibit B**, pp. 41, 45; and Connecticut Teachers' Retirement Board

approval notice, attached as **Exhibit J**.  In accepting those benefits, Dr. Fenner

acknowledged that the effective date of her Disability Allowance (July 1, 2000) could

"NOT precede [her] last paid date of employment."  See **Exhibit L**.

In order to qualify for a disability allowance from the Teachers' Retirement

System, an employee must be certified as disabled by the Connecticut Teachers'

Retirement Board Medical Review Committee.  See Summary of Benefits, p. 8,

attached as **Exhibit K**.

> For the first 24 months "Disabled" means that you are unable to
> perform your duties as a teacher because of a physical or mental
> impairment which is expected to be of long duration or result in
> death.  After 24 months "Disabled" means that you are unable to
> perform any substantial work.

See **Exhibit K**.

Dr. Fenner's condition worsened in August 2000.  See **Exhibit B**, p. 22.  And on

December 17, 2000, she passed away.  See Amended Complaint, First Count, ¶6.

As of July 1, 2000, Dr. Fenner was no longer principal.  See **Exhibit B**, p. 117.

The position of principal was the only job for which she had been hired.  See **Exhibit B**, pp. 74, 117.  The Farmington Board of Education no longer paid Dr. Fenner's insurance premiums.  See **Exhibit B**, pp. 117-18; and **Exhibit H**.  The Board of Education no longer paid her salary.  See **Exhibit B**, p. 118; and Disability Effective Date Election, attached as **Exhibit L**.  Dr. Fenner was no longer paying union dues.  See **Exhibit B**, p. 118.  She no longer had an office to report to.  See **Exhibit B**, p. 118.  She no longer had any duties or assignments.  See **Exhibit B**, p. 118.  The plaintiffs contend that Dr. Fenner was not intending to retire.  See **Exhibit B**, p. 77.  However, as of December 16, 2000, she was still not working and another individual had been hired to replace her.  No agreement had been made with the Farmington Board of Education regarding what Dr. Fenner's job would be should she be able to return to active employment.  See **Exhibit B**, p. 80.  The Board of Education had not offered Dr. Fenner another position, and she had not requested another position.  See **Exhibit B**, pp. 75, 76.  There was no agreement regarding Dr. Fenner's future title, her position, her salary and/or her benefits.  See **Exhibit B**, pp. 80-81.  Dr. Fenner knew she was unable to serve as principal in her condition.  See **Exhibit B**, pp. 37-38.

James Fenner is the executor of Dr. Fenner's estate.  See **Exhibit B**, p. 5.  Alistair Goodman and Nicholas Goodman are the sons of the decedent.  They were the named beneficiaries on Dr. Fenner's life insurance policy.  See Amended Complaint, First Count, ¶8 and **Exhibit A**.

Neither Dr. Fenner nor her estate ever filed a grievance regarding Dr. Fenner's separation from employment or the discontinuance of her life insurance policy.  <u>See</u> **Exhibit B**, p. 21.  Similarly, neither Dr. Fenner nor the collective bargaining unit of which she was formally a member ever asked Attorney Deneen, counsel for the Farmington Administrators' and Supervisors' Association, to file a grievance.  <u>See</u> deposition transcript of Kevin Deneen, p.130, attached as **Exhibit M**.

Neither Dr. Fenner nor her estate filed a complaint with the Commission on Human Rights and Opportunities.  <u>See</u> **Exhibit B**, pp. 58, 124.

Dr. Fenner's only request for a leave of absence was her application for disability leave from the Teachers' Retirement Board.  <u>See</u> **Exhibit B**, p. 127.  She never applied for leave pursuant to the Family Medical Leave Act.  See **Exhibit B**, pp. 38-40.  There is no evidence that she ever indicated when she would be able to return to work.  Mr. Fenner concedes that his wife was not on a leave from her position as principal, but rather from some unknown position for which she had no title, no salary, no office and no benefits.  <u>See</u> **Exhibit B**, pp. 128-129.  As of July 1, 2000, Dr. Fenner was no longer performing the essential functions of her position as principal of the West District School.  <u>See</u> **Exhibit B**, p. 125.  Further, there was no other job specifically designated for which she had been retained.  <u>See</u> **Exhibit B**, p. 125.

II.   **LEGAL STANDARD**:

The court shall render summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56c; Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).  A factual dispute is "genuine" when the evidence is such that a reasonable jury can return a verdict for the non-moving party.  See Anderson, 477 U.S. at 247-48.  A "material fact" is one whose resolution will effect the ultimate determination of a case.  See id.

In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party.  See Anderson, 477 U.S. at 255.  However, "[t]he mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  Hayut v. State University of New York, 352 F.3d 733, 743 (2nd Cir. 2003).  "[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2nd Cir. 2002), quoting, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (underline in original).  A non-moving party may not rely on mere allegations, legal conclusions, unsupported statements, or a denial of the pleadings.  See Celotex Corp. v. Catrett , 477 U.S. 317, 327 (1986).

III.    <u>**LAW AND ARGUMENT**</u>:

A.    <u>**The Defendant Is Entitled To Summary Judgment As To The Plaintiffs' Breach Of Contract Claim (First Count)**</u>.

The defendant is entitled to summary judgment as to the plaintiffs' breach of contract claim for three reasons: (i) the plaintiffs' decedent was not an employee at the time of her death, and therefore, she did not enjoy rights under the Collective Bargaining Agreement; (ii) the plaintiffs' decedent was not Actively at Work at the time of her death, and therefore, she was not entitled to life insurance under the Sun Life policy; and (iii) assuming *arguendo* that the plaintiffs' decedent was an employee at the time of her death, the plaintiffs' claim must fail because the decedent and/or her estate failed to exhaust available grievances procedures.

1.    <u>**The Plaintiffs' Decedent Was Not An Employee-Administrator At The Time Of Her Death**</u>.

The plaintiffs claim that the decedent was an employee-administrator of the Farmington Board of Education, and as such, enjoyed certain rights under the Collective Bargaining Agreement, specifically the right to have term life insurance with the premium fully borne by the defendant.  This unsubstantiated assertion is made only by Dr. Fenner's administrator, and is based on speculation at best.  At the time of her death, on December 17, 2000, Dr. Fenner was no longer an employee-administrator of the Farmington Board of Education, and was therefore, no longer a party to the applicable Collective Bargaining Agreement.

The following facts are undisputed.  The decedent was diagnosed with terminal cancer in November 1999.  <u>See</u> **Exhibit B**, p. 81.  Her doctor advised her that she had less then one year to live.  <u>See</u> **Exhibit B**, pp. 81-82, 96.  She advised Dr. Villanova of her medical condition.  <u>See</u> **Exhibit B**, p. 97.  Three months later, the decedent wrote to the community:  "I met with the faculty this morning to announce that this would be my last year as principal of the West District School… .  I shall miss being here next year tremendously."  <u>See</u> **Exhibit B**, pp. 71-73, 101; and **Exhibit E**.  Dr. Villanova notified the Board of Education of Dr. Fenner's intention to retire and developed a selection process and timeline for the appointment of a new principal to West District School.  <u>See</u> **Exhibit F**; and **Exhibit G**.  By letter dated June 13, 2000, the decedent was informed that the Farmington Board of Education would no longer be paying the premiums on her health insurance.  <u>See</u> **Exhibit H**.  Accordingly, Mr. Fenner initiated payments to continue his wife's coverage.  <u>See</u> **Exhibit B**, pp. 42-45.  All of these actions are consistent with an individual who intended to resign her position.

On June 22, 2000, Marilyn Fenner applied for disability benefits with the Connecticut Teachers' Retirement Board.  <u>See</u> Amended Complaint, First Count, ¶9; and **Exhibit I**.  As part of the application, Dr. Villanova indicated that Dr. Fenner would "retire" from her position as West District School Principal on June 30, 2000."  <u>See</u> **Exhibit I**.  Her application for benefits was approved.  <u>See</u> **Exhibit J**.

As of July 1, 2000, Dr. Fenner was not performing any duties as principal; she

was not paying union dues; she no longer had an office; and she was unable to perform the essential functions of the position. <u>See</u> **Exhibit B**, pp. 117-18, 125. At best, she wanted to return to work at an undetermined time in the future to an undetermined position where the duties, salary, and title had not yet been decided. <u>See</u> **Exhibit B**, pp. 80-81. According to Mr. Fenner, his wife hoped to be able to return as a "consultant" at sometime in the future; he admits, however, that she no longer held the position of principal, and had not been hired as a consultant. <u>See</u> **Exhibit B**, pp. 78-80, 117. Based on these undisputed facts, this Court may determine as a matter of law that the decedent was no longer an employee-administrator of the Farmington Board of Education at the time of her death. As such, the decedent's estate may not prevail on a breach of contract claim based on an agreement to which the decedent was not a beneficiary.

> **2.** **<u>The Decedent Was Not Actively At Work At The Time Of Her Death And Therefore Not Entitled To Coverage Under The Sun Life Policy</u>**.

The Sun Life policy expressly provides that an employee's insurance will cease for a number of reasons. Specifically, the policy states that:

> Your insurance ceases on the earliest of:
> - the date the Group Policy terminates;
> - the date you are no longer in an Eligible Class;
> - the date your class is no longer included for insurance;
> - the last date any required premium has been paid for your insurance;
> - *the date you retire*;
> - the date you request in writing to terminate your insurance;

  - the date you enter active duty in any armed services during a time
    of war (declared or undeclared);
  - *the date your employment terminates*;
  - *the date you cease to be Actively at Work*.

<u>See</u> **Exhibit D**, p. 7 (emphasis added).  In this case, the plaintiffs deny that the

decedent retired from her employment with the Farmington Board of Education.

However, no admissible evidence supports this assertion.  The claim is self-serving

and is predicated entirely on hearsay.

Regardless, it is undisputed that the decedent was no longer Actively at Work.

The term "Actively at Work" is defined in the Sun Life policy to mean that the employee

performs all the regular duties of her job for a full work day.  <u>See</u> **Exhibit D**, p. 28.  The

very fact that the decedent was receiving a disability allowance is a clear indication

that she was not actively at work.  <u>See</u> **Exhibit L**. The plaintiffs concede that the

decedent was no longer performing the duties of the position of principal during the

weeks and months preceding her death.  The decedent did not hold any identifiable

position within the Farmington Board of Education.  As such, she was not, as a matter

of law, Actively at Work.

> **3.    The Plaintiffs' Claims Are Barred Because Neither The
> Decedent Nor Her Estate Exhausted The Available Grievance
> Procedure**.

Assuming *arguendo* that the decedent was an employee at the time of her

death, and entitled to benefits, the plaintiffs' claim must nonetheless fail.  "It is well

settled under federal and state law that before a resort to the courts is allowed, an

employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the Collective Bargaining Agreement between the defendant and the plaintiff's union… ."  Hunt v. Prior, 236 Conn. 421, 431-32 (1996); see also, School Administrators' Assn. v. Dow, 200 Conn. 376, 381 (1986), citing, Vaca v. Sipes, 386 U.S. 171, 184, 87 S. Ct. 903 (1967).  "[I]f an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter."  Concerns Citizens of Sterling v. Sterling, 204 Conn. 551, 556 (1987).  "Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction."  Hunt, 236 Conn. at 431, quoting, Labbe v. Pension Commission, 229 Conn. 801, 811 (1994).

> A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it… .  [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances.  If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement.  A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.

School Administrators' Assn., 200 Conn. at 382.

The legislature's enactment of the arbitration statutes (C.G.S. §§ 52-408 through 52-424) provides further support for the settlement of employment disputes between teachers and boards of education through contract grievance-arbitration

procedures.  See Daley v. Hartford, 215 Conn. 14, 30 (1990); School Administrators Assn., 200 Conn. at 381-82.  Section 52-408 provides that:

> An agreement in any written contract ... to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof, ... shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally.

Sections 52-418 through 52-420 provide any disgruntled party to an arbitration the right to move to modify or vacate an arbitration award.

Pursuant to the doctrine of exhaustion, labor issues are to be handled in the first instance by the individuals and boards most familiar with the practices, norms, interpretations and standards of any given field.  In this case, assuming *arguendo* that the decedent was an employee-administrator at the time of her death, issues regarding benefits available to her should have been handled through the procedures set forth in the Collective Bargaining Agreement.

Article VIII of the Collective Bargaining Agreement establishes an informal procedure and a four-step formal procedure for administrators who believe that the Agreement was violated.  Under said procedure, an administrator with a grievance shall first discuss the problem informally with her immediate supervisor.  See **Exhibit C**, Article VIII, §E.  If an administrator is not satisfied with the disposition of the grievance at the informal level, then she may formally file a grievance with her immediate supervisor.  See **Exhibit C**, Article VIII, §F(1).  If unsuccessful at this stage,

then the administrator may appeal to the superintendent.  See **Exhibit C**, Article VIII,

§F(2).  If the administrator remains unsatisfied, she may submit a grievance to the

chairman of the Board of Education.  See **Exhibit C**, Article VIII, §F(3).  Finally, if the

administrator remains unsatisfied with the disposition of her grievance, she may

request that the grievance be submitted to binding arbitration.  See **Exhibit C**, Article

VIII, §F(4).

In this case, neither the decedent nor her estate filed a grievance pursuant to

this procedure.  See **Exhibit B**, p. 21.  As such, this court lacks subject matter

jurisdiction, and the plaintiffs' claim must fail.

> **B.**     <u>**The Defendant Is Entitled To Summary Judgment As To The Plaintiffs' Claim Of Disability Discrimination In Violation Of The Connecticut Fair Employment Practices Act, §46a-60(a)(1)**</u>.

> **1.**     <u>**The Decedent And/Or Estate Has Failed To Exhaust Available Administrative Remedies**</u>.

General Statute §46a-101 provides that:  "[N]o action may be brought [in the

superior court] unless the complainant has received a release from the Commission…

."  "It is the CHRO that is charged by the Act with initial responsibility for the

investigation and adjudication of claims of employment discrimination."  <u>Sullivan v.

Board of Police Commissioners</u>, 196 Conn. 208, 216 (1985).  The plaintiff who "[f]ails

to follow the administrative route that the legislature has prescribed for his claim of

discrimination, lacks the statutory authority to pursue that claim in the Superior Court."

<u>Id</u>.

16

In this case, neither the decedent nor her estate filed a complaint with the CHRO.  See **Exhibit B**, pp. 58, 124.  Accordingly, this Court lacks subject matter jurisdiction to hear the plaintiffs' claim of disability discrimination.

### 2.    The Plaintiffs Cannot Establish Disability Discrimination As A Matter Of Law.

The Connecticut courts generally look to federal employment discrimination law for guidance in enforcing its own anti-discrimination statute.  See Craine v. Trinity College, 259 Conn. 625, fn. 6 (2002); Levy v. Commission on Human Rights and Opportunities, 236 Conn. 96, 103 (1996); State v. Commission on Human Rights and Opportunities, 211 Conn. 464, 469-70 (1989).  As with claims under Title VII, a claim of discrimination under the Connecticut Fair Employment Practices Act is also analyzed under the *McDonnell-Douglas* burden-shifting paradigm.  See Ann Howard's Apricots Restaurant v. CHRO, 237 Conn. 209, 225 (1996); United Technologies Corp. v. CHRO, 72 Conn. App. 212, 221, (2002).  To establish a *prima facie* case of discrimination, the plaintiffs must show that:  (1) the decedent had a disability as defined under the CFEPA; (2) she was qualified to perform the essential functions of her job with or without reasonable accommodation; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances given rise to an inference of discrimination on account of her disability. See Reeves v. Johnson Controls World Svs., 140 F. 3d 144, 149-50 (2nd Cir. 1998); Ann Howard's, 237 Conn. at 225.

Assuming *arguendo* that the decedent had a disability under the Act, the plaintiffs' claim must fail because they cannot establish that the decedent was qualified to perform the essential functions of the position of principal, the only position for which she was hired.  On the contrary, the plaintiffs concede that the decedent was unable to perform the essential functions of her position.  See **Exhibit B**, p. 125. During the weeks and months prior to her death, the decedent was not performing any of the duties required of the principal position.  See **Exhibit B**, pp. 117-18.  Therefore, the plaintiffs cannot establish a *prima facie* case of discrimination.

### C.    The Defendant Is Entitled To Summary Judgment As To The Plaintiffs' Claim Pursuant To The Family Medical Leave Act.

The plaintiffs claim that the Farmington Board of Education failed to pay the premiums for the decedent's life insurance in violation of the Family Medical Leave Act, 29 U.S.C. §2611, *et seq.*  This claim must fail for several reasons.  First, the plaintiffs may not invoke the Family Medical Leave Act as the decedent never provided the Board with adequate notice of her intent to request family medical leave.

Pursuant to the Family Medical Leave Act, an "eligible employee" is entitled to twelve (12) weeks of leave during any twelve (12) month period, so long as she has a "serious health condition that makes an employee unable to perform the functions of the position of such an employee."  29 U.S.C. §2612(a)(1)(D).  The definition of a "serious health condition" includes: an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care at a hospital, hospice, or residential medical

care facility; or (B) continuing treatment by a health care provider.  See 29 U.S. C.
§2611(11).

In order to seek redress under the Family Medical Leave Act, an "eligible
employee" must provide her employer with notice of her request for family medical
leave.  In accordance with 29 U.S.C. §2612(e)(2)(B), an employee "shall provide the
employer with not less than thirty (30) days' notice before the day the leave is to begin,
of the employee's intention to take leave… ."  In order to satisfy this requirement, the
plaintiffs must show that the decedent provided the Farmington Board of Education
with enough information to put the Board on notice that the decedent's condition fell
within the Family Medical Leave Act's definition of a serious health condition, and that
the decedent provided an indication as to when she would be able to return to work.
See 29 U.S.C. §2612(a)(1)(D); Collins v. NTN-Bower Corp., 272 F.3d 1006 (7th Cir.
2001).

In the present case, the decedent notified Dr. Villanova, Superintendent, that
she had been diagnosed with an incurable brain tumor.  Thereafter, she informed the
parents of the West District School that the academic year of 1999-2000 would be her
last year as principal.  See **Exhibit B**, pp. 71-73, 101; and **Exhibit E**.  These actions
indicate an intent to retire, not an intent to take 12 weeks of leave over the summer
and return to work in the fall.  The plaintiffs' decedent never wrote the Board
requesting disability leave.  See **Exhibit B**, pp. 38-39.  She never completed a

Department of Labor form for leave under the Family Medical Leave Act.  See **Exhibit B**, p. 39.  She never asked Dr. Villanova for 12 weeks of leave under the Act.  See **Exhibit B**, p. 40.  At no point in time did the decedent ever request reinstatement as principal.  Indeed, another individual was hired to fill the position.  There is no indication that the decedent ever provided her employer with even a rough estimate of when she would be able to return to work.  The plaintiffs concede that the decedent did not have any discussion with the Board regarding what her job would be upon her return.  See **Exhibit B**, pp. 75, 76, 80-81.  No discussions, let alone an agreement, took place regarding the job duties, the salary, the position, and/or the benefits that the decedent would receive if she was able to return to work.  See **Exhibit B**, pp. 80-81.  Based on these facts, the plaintiffs cannot establish that the decedent provided sufficient notice of her request for leave under the Family Medical Leave Act.

Similarly, the plaintiffs' claim must fail because the decedent was not an "eligible employee."  Employees who have been terminated or resigned their employment may not request family medical leave after the date of their termination or resignation.  In this case, the decedent resigned her position as principal effective June 30, 2000.  As such, she was not an eligible employee under the Family Medical Leave Act and could not request leave after her separation from employment.

Moreover, even assuming that the plaintiffs' decedent had requested and/or been afforded leave under the Family Medical Act, that leave would have expired after

twelve weeks.  As such, she would have had no leave remaining as of December 15, 2000.  Further, she had yet to indicate when she would be able to return to work. Indeed, the decedent was unable to return to work and remained unable to perform the essential functions of the position.  As such, the plaintiffs' decedent no longer had the protections of the Family Medical Leave Act.  See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 144, 161 (2nd Cir. 1999), citing, 29 C.F.R. §§825.214(b) and 825.216(d).

**IV.    CONCLUSION:**

For the foregoing reasons, the Court should enter summary judgment in favor of the defendant, Town of Farmington Board of Education, as to the First, Second and Third Counts of the plaintiffs' complaint.

DEFENDANT,
TOWN OF FARMINGTON BOARD
OF EDUCATION


By/s/Alexandria L. Voccio
   Alexandria L. Voccio
   ct21792
   Howd & Ludorf
   65 Wethersfield Avenue
   Hartford, CT  06114
   Phone:  (860) 249-1361
   Fax:  (860) 249-7665
   E-Mail:  avoccio@hl-law.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 12th day of March, 2004.

David B. Beizer, Esquire
Beizer & Weintraub
345 North Main Street
West Hartford, CT 06117

Louis B. Blumenfeld, Esquire
Cooney, Scully and Dowling
Hartford Square North
Ten Columbus Boulevard
Hartford, CT  06106-5109

/s/Alexandria L. Voccio
Alexandria L. Voccio
