FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2004 DEC -9  A 10: 58

U.S. DISTRICT COURT
HARTFORD, CT.

ALISTAIR GOODMAN  :
NICHOLAS GOODMAN  :
JAMES FENNER     :
                 :    CIVIL ACTION NO.
        Plaintiffs, :  3:01-CV-01609 (CFD)
                 :
vs.              :
                 :
TOWN OF FARMINGTON :
BOARD OF EDUCATION :
                 :    DECEMBER 6, 2004
        Defendant. :
                 :

**REPLY MEMORANDUM OF PLAINTIFF
RE PLAINTIFFS' MOTION TO AMEND COMPLAINT**

This memorandum replies to Defendant, Town of Farmington, Board of Education's (hereinafter "Farmington") November 29, 2004 memorandum in opposition to plaintiffs' motion to amend their complaint. Farmington's opposition appears to be two-fold.

I.   The Procedural Claim

First, Farmington claims that plaintiffs' motion to amend was made "after inordinate delay, no explanation was offered for the delay and the amendment would prejudice the defendant." This set of claims proffered by Farmington is patently disingenuous.

Suit was initiated against Farmington by plaintiffs on August 8, 2001. Shortly after removing this case from state court where it was originally brought, to federal court

on August 24, 2001, <u>Farmington requested a stay</u> of this litigation[1] allegedly because its liability insurance carrier was going through a solvency/receivership proceeding in Pennsylvania. The stay was granted by District Court Judge Goettel. <u>Upon numerous applications of defendant's attorneys this stay was extended</u> from time to time until it expired on January 31, 2004. The stay was in existence in this case a total of 22 months. See Exhibit B. Plaintiffs thereupon took Farmington Superintendent of School's deposition on August 5, 2004. Plaintiffs first received credible evidence of the fact that Farmington had never given specific notice to Marilyn Fenner that it, Farmington was terminating its payment of term life insurance premiums on behalf of Dr. Fenner on this date, August 5, 2004. Very shortly after the deposition, the parties agreed to attempt mediation and utilized the services of parajudicial officer Raymond Green on two separate dates. Immediately prior to agreeing to attempt mediation, plaintiffs secured the consent of Farmington to <u>not</u> use whatever delay was occasioned by the mediation as a basis for an objection to plaintiffs then announced intent to amend their complaint to add claims relating to Farmington's failure to give Fenner notice of insurance termination. It is crystal clear that if there was "inordinate delay", which claim is denied, the delay was occasioned solely and specifically <u>by</u> Farmington.

Clearly, any amendment adding claims relating to Farmington's failure to give notice cannot prejudice the defendant Farmington, since it, Farmington was fully aware from the inception of its decision to terminate premium payments, of what notice it either was, or was not giving Fenner!

Second, Farmington argues that plaintiffs' motion to amend should be denied as the "proposed amendments would be futile". An analysis of the facts and law in this case

---

[1] Farmington's initial application for a stay is dated April 9, 2002. See Exhibit A affixed hereto.

2

clearly demonstrate that this argument of Farmington's is simply hollow rhetoric. The thrust of Farmington's objection is that plaintiffs in this case should be foreclosed from proceeding in this court for "failure to exhaust the grievance procedure". However, a well documented exception to the exhaustion doctrine exists – namely the futility exception.    See the case of *Mendello v. Board of Education*, 246 Conn. 456 (1998) where for example the Connecticut Supreme Court decided that requiring a complainant to resort to the administrative process was demonstrably futile or inadequate where the dispute was "whether she resigned voluntarily or was forced to do so by the wrongful conduct of Thompson. That kind of factual dispute simply does not fit within either the purpose or the language of § 10-151(d)". *Mendello*, supra at p. 469. Or consider *Frank v. Department of Parks & Rec of Greenwich*, 78 Conn. App. 601 (2003) where the remedy under the collective bargaining Agreement was deemed inadequate because the arbitrator had no authority to grant the worker more than 35 hours credit.   Interestingly enough, in the Frank case, the collective bargaining agreement provided exactly the same standard as in the instant case, to wit: "arbitrators shall have no power to add to, subtract from or in any way change or modify any of the provisions of [the collective bargaining] Agreement ..." *Frank*, supra at p. 608.

See also such cases as *Brackett v. St. Mary Hospital*, 1998 Conn. Super Lexis 3174; *Beauregard v. City of Norwich*, 1998 Conn. Super Lexis 2336; *Labbe v. Pension Commisison*, 229 Conn. 801, 812 (1994) where futility rendered the exhaustion of administrative remedy principle a nullity.

3

The facts in this case amply demonstrate that <u>at the time</u> plaintiffs first became aware of their claims[2] relating to term life insurance, the insured, Marilyn Fenner was already dead, was in no sense of the word still an employee of Farmington, and her term life insurance policy had long since been terminated. Even <u>assuming</u> her estate could have filed a grievance with the respective Union, it would have availed Fenner's estate nothing for there was no remedy to be fashioned that would correct the situation.

Furthermore, as suggested above, the very terms of the Union – Administrator's contract preclude anyone other than an employee from grieving a matter.[3] There is no right of an estate or an estate representative to grieve such a matter under this specific labor-management contract. The two cases cited by Farmington[4] in support of its position that exhaustion of an administrative remedy is required are for numerous reasons inapposite, one reason being that neither case deals with the particular labor-management contract that is at issue in this case; another reason being there was no holding that in a case such as the case at hand insurance contract beneficiaries had to exhaust an administrative remedy.

---

[2] Plaintiffs first became aware of Farmington's termination of term life insurance premium payment well <u>after</u> Marilyn Fenner's death on December 17, 2000. Plaintiffs' formal notification of the lack of insurance coverage was first received by the attorney probating Dr. Fenner's estate on February 6, 2001 in response to a letter request for information. See Exhibit C, a 3-page letter dated February 6, 2001 from Robert Villanova, Superintendent of Farmington Schools to Attorney David B. Beizer Q & A #3; see page 2 of Exhibit C.

[3] Paragraph A1 of the contract, Exhibit D specifically provides: "A grievance shall be a complaint by an administrator …".

[4] *Hiller v. Liquor Salesmen's Union*, 338 F.2d 778 (2d Cir 1964) and *Langston v. Housing Authority of the City of Bridgeport*, (Conn. Super 1999). The *Hiller* case is quite dissimilar from the subject case in that *Hiller* involved a plaintiff being deprived of <u>disability</u> insurance by his employer and not a claim by third party beneficiaries re: benefits under a term life insurance contract; it also involved an alleged conspiracy between union and employee. See Exhibit E. The *Langston* case suffered from the same problem as the subject case – no standing on the part of the plaintiffs to seek arbitration. In addition, the parties in interest in the subject case, the two sons who are beneficiaries of the term life insurance have <u>no standing to grieve the termination</u> of premium payment. In no way are Farmington's cited authorities any precedent for their claims.

II. <u>The futility of any resort to the grievance/arbitration process</u>.

A copy of the applicable Farmington Grievance procedure is affixed hereto as Exhibit D.

Upon review, it is perfectly apparent that this grievance procedure is/was not applicable to the fact situation at hand. To be noted is the following:

(1) Under Section A, Definition J "A grievance shall be a complaint by an <u>administrator</u> that ...". The language of this section does <u>not</u> contemplate a grievance being filed by a representative of a school administrator, let alone a representative of a <u>deceased</u> school administrator;

(2) An aggrieved person is defined as "the person or persons making this claim". In this case, the only aggrieved persons under the term life insurance policy are the two sons/beneficiaries of decedent Marilyn Fenner, namely plaintiffs Nicholas Goodman and Alistair Goodman. Once again Nicholas Goodman and Alistair Goodman are not "an administrator" nor even a representative of an administrator. They are life insurance contract beneficiaries, pure and simple;

(3) As the Formal Procedure of the Grievance Procedure spells out (see 1. Level One – Immediate Supervisor):

> "... The grievance shall be in writing and such writing shall specifically set forth the act or condition on which the grievance is based the section of the contract alleged to be involved, and the remedy requested ...".

Even assuming the two sons of deceased Marilyn Fenner had standing to initiate a grievance (which clearly they do not) <u>what</u> remedy are they expected to request in their grievance? (a) that Farmington agree that it made a mistake in terminating payment of the term life insurance premium for their mother approximately 6 to 8 months before her

5

death? (b) that Farmington agree that it should have given <u>notice</u> to Marilyn Fenner in July of 2000 at the time it was discontinuing premium payments? (c) That Farmington retroactively pay premiums to Sun Life Assurance Co? In short, no reasonable remedy existed in this case – even assuming there was standing for Nicholas Goodman and Alistair Goodman to file a grievance.

(4) When we move from the grievance level of this policy to the arbitration level, there are further road blocks – which create additional bases of "futility".

Assuming the two beneficiaries of the term life insurance policy <u>have</u> grieved this matter and were "not satisfied with the disposition of [their] grievance", it is not they, but rather "the Association" which has sole authority to "submit the grievance to binding arbitration…".

(5) Lastly, even if "the Association" had become involved and was persuaded to request binding arbitration, such binding arbitration would have been a futile act for the concluding sentence of the "Grievance Procedure" sets forth the limits of the arbitrator's powers as follows: "He/she shall have no power to add to, delete from, or modify in any way any of the provisions of this Agreement." In short, the whole fabric of the grievance procedure is not only ill-suited to address the unique fact situation that arose in this case, but is totally inapplicable to the particular factual scenario that is presented by this case.

For all these reasons, as well as reasons recited in plaintiffs' original memorandum, plaintiffs' motion to amend their complaint should be granted.

6

Respectfully Submitted,
PLAINTIFFS

By: _____
David B. Beizer, Esq. (ct06161)
Beizer & Weintraub
Their Attorneys
345 North Main Street
West Hartford, CT 06117
(860) 236-5491

## CERTIFICATION

This is to certify that a copy of the foregoing was sent this 6th day of December, 2004, via first class mail, postage prepaid, to:

Louis B. Blumenfeld, Esq.
Cooney, Scully and Dowling
Hartford Square North
Ten Columbus Boulevard
Hartford, Connecticut 06106

Alexandria L. Voccio, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut 06114-1190

_____
David B. Beizer
Commissioner of Superior Court

EXHIBIT A

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALISTAIR GOODMAN, NICHOLAS, GOODMAN AND JAMES FENNER, EXECUTOR OF THE ESTATE OF MARILYN B. FENNER,<br>    Plaintiffs | NO.: 3:01CV1609 (GLG) |
| v. | |
| TOWN OF FARMINGTON BOARD OF EDUCATION,<br>    Defendant | APRIL 9, 2002 |

## MOTION FOR STAY

Pursuant to court order issued March 28, 2002, by the Commonwealth Court of Pennsylvania in the matter of <u>M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania v. Legion Insurance Company</u>, Docket No. 183 MD 2002, Legion Insurance Company ("Legion") and its subsidiaries have been placed into Rehabilitation effective April 1, 2002. Pursuant to the order, the Insurance Commissioner of the Commonwealth of Pennsylvania has been appointed Rehabilitator of Legion and has taken immediate possession of Legion's property, business and affairs. Furthermore, Paragraph 24(b) of the Order for Rehabilitation states:

ORAL ARGUMENT IS NOT REQUESTED

# HOWD & LUDORF

ATTORNEYS AT LAW

JOHN R. LILLIENDAHL, III°
JOHN J. BOGDANSKI*
PHILIP T. NEWBURY, JR.*†
THOMAS R. GERARDE
MARK J. CLAFLIN
CHRISTOPHER M. VOSSLER◊
WILLIAM F. CORRIGAN
DAVID S. MONASTERSKY
MICHAEL J. ROSE
COLETTE S. GRIFFIN
MELINDA A. POWELL
KEITH E. MARQUIS
PAUL ERICKSON*^
DANIEL C. DeMERCHANT°
LISA K. TITUS
ALEXANDRIA L. BUFFORD◊
BEATRICE S. JORDAN
JAY T. DONFRANCISCO
JOHN J. RADSHAW, III◊
DeANN K. SEYMOUR
CLAYTON S. MILLER
ERIC D. EDDY

65 WETHERSFIELD AVENUE
HARTFORD, CONNECTICUT 06114-1190

(860) 249-1361
(860) 249-7665 (FAX)
www.hl-law.com

RETIRED
EDWARD S. LUDORF

*ALSO ADMITTED IN MASSACHUSETTS
†ALSO ADMITTED IN RHODE ISLAND
◊ALSO ADMITTED IN NEW YORK
°ALSO ADMITTED IN FLORIDA
^ALSO ADMITTED IN ILLINOIS

May 8, 2002

David B. Beizer, Esquire
Beizer & Weintraub
345 North Main Street
West Hartford, CT 06117

Re:   Alistair Goodman, et al v. Town of Farmington Board of Education
      H&L File No.: 110-06234

Dear Attorney Beizer:

I am in receipt of your notice of deposition currently scheduled for May 28, 2002.

As you know, the insurance carrier for the Farmington Board of Education, Legion Insurance Company, has been placed into rehabilitation nationally. That rehabilitation is currently being overseen by the Pennsylvania Insurance Commissioner. In light of the Pennsylvania court's approval of the rehabilitation petition, and consistent therewith, the undersigned has moved to stay all further proceedings involving this case.

Accordingly, I am hoping that you would agree to postpone Attorney Deneen's deposition until such time as Judge Goettel has ruled on our Motion for Stay.

Please contact me at your earliest opportunity to discuss this matter further.

Very truly yours,

Michael J. Rose

MJR/lgw
cc:   Louis B. Blumenfeld, Esquire

EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
AUG 11  3 21 PM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | |
|---|---|
| ALISTAIR GOODMAN, NICHOLAS, GOODMAN AND JAMES FENNER, EXECUTOR OF THE ESTATE OF MARILYN B. FENNER, Plaintiffs | NO.: 3:01CV1609 (GLG) |
| TOWN OF FARMINGTON BOARD OF EDUCATION, Defendant | AUGUST 7, 2003 |

## MOTION FOR STAY DUE TO LIQUIDATION

Pursuant to court order issued July 25, 2003, by the Commonwealth Court of Pennsylvania in the matter of <u>M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania v. Legion Insurance Company</u>, Docket No. 183 MD 2002, Legion Insurance Company ("Legion") has been declared insolvent and ordered to be liquidated effective July 28, 2003. The Order of Liquidation (copy attached) specifically states in Paragraph 24 as follows:

> Unless otherwise agreed to by the Liquidator or by the relevant guaranty associations, all actions in which Legion is or may be obligated to defend a party in any court of law are stayed to the extent provided by applicable law, subject to further order of the Court. The Liquidator may cooperate, upon request of a guaranty association, in seeking a stay of any action. Failure to honor the stay may result in sanctions, including the subordination of a claim to all other claims in the same class.

ORAL ARGUMENT IS NOT REQUESTED

Motion for stay is granted until January 28, 2004 or until the Connecticut Insurance Guaranty Association agrees to proceed with the defense of this action, whichever is earlier.

/s/ Gerard L. Goettel, U.S.D.J.

September 3, 2003
Waterbury, CT

# FARMINGTON PUBLIC SCHOOLS
farmington, connecticut 06032-1053

DR. ROBERT M. VILLANOVA
SUPERINTENDENT OF SCHOOLS

February 6, 2001

Attorney David B. Beizer
Beizer & Weintraub
345 North Main Street
West Hartford, CT 06117

Dear Attorney Beizer:

I have gathered the information that you requested on behalf of the Estate of Marilyn B. Fenner. As the attached information shows, however, Dr. Fenner was not in the employ of the Farmington Public Schools at the time of her death, but rather she resigned her employment effective at the end of the 1999-2000 school year. Accordingly, Dr. Fenner had no interest in a contract of term life insurance at the time of her death. With that understanding, I can provide the following information.

> "1. Would you kindly send a copy of the contract of term life under which she had an interest."

I enclose the booklet describing the term life insurance that is provided to persons employed by the Farmington Public Schools as school administrators. As you will see from the explanatory materials provided to employees, this coverage terminates when employment terminates. *Attachment A.*

> 2. "Would you advise whether you have any records as to whether she ever either resigned from the Farmington school system or was terminated from the Farmington school system. If either of these events occurred, please send appropriate documentation."

Dr. Fenner resigned her employment from the Farmington Public Schools to me in June 1999, effective at the end of the 1999-2000 school year and confirmed her intent in a meeting held in my office in February of 2000. Dr. Fenner again confirmed her resignation of employment by notification to her staff at a meeting on February 29, 2000 and by letter dated that date to West District School Parents, in which she announced that 2000-2001 "will be my last year as Principal of West District School." *Attachment B.*

By Memorandum dated March 3, 2000, I informed the Board of Education that Dr. Fenner was resigning her employment as of June 30, 2000. *Attachment C.* I also confirmed Dr. Fenner's retirement in my supporting statement dated June 26, 2000 submitted to the Teachers' Retirement Board: "Dr. Fenner submitted her intent to retire letter in April 2000 and will retire from her position as West District School Principal on

June 30, 2000." *Attachment D.* I completed this form at Dr. Fenner's request and reviewed its content with her by phone prior to returning the form. You will note that my statement refers to Dr. Fenner's "intent to retire letter in April 2000," but in our review to respond to your letter we have not been able to find that letter.

There is, however, other documentation of Dr. Fenner's retirement. By letter dated June 13, 2000, Amy Barret, Personnel Supervisor, confirmed Dr. Fenner's resignation for purposes of retirement by letter dated June 13, 2000. *Attachment E.* In accordance with that letter, Dr. Fenner did exercise her right as a retired employee to participate in the group health insurance plan, and Dr. Fenner remitted the payments due from her as a former employee. There is no provision, however, for retired administrators to continue with the term life insurance plan.

> "3.   Would you advise the last time that you paid a premium on her behalf to Sun Life for her participation in the group term life insurance plan."

The district pays the premium on the term life insurance benefit based on the census of active employees each month. The last time the district paid a premium concerning Dr. Fenner was for June, 2000. The number of administrators covered by the term life insurance policy was not changed for July, 2000, reflecting Dr. Fenner's retirement and the employment of Dr. Ruth Wade, her successor.

> "4.   If at any time you discontinued paying a premium for Marilyn Fenner's participation, would you kindly send me a copy of any notice that you sent to Marilyn Fenner advising her of the discontinuance of her policy or the fact that Farmington was no longer paying the premium on her life insurance."

Dr. Fenner was notified through her policy that it would terminate upon the termination of her employment. Attachment A. In addition, the letter dated June 13, 2000 providing her with the option of continuing her health insurance benefits at her own expense did not include the option of continuing life insurance. *Attachment E.*

I was surprised and concerned by your letter and at a related conversation I had with Mr. Fenner, who questioned whether Dr. Fenner may have been on some sort of leave status at the time of her death.

At four "public retirement celebrations" that I attended along with Dr. Fenner (West District faculty retirement party, Farmington Board of Education's retirement reception in honor of Dr. Fenner, and the Farmington Association of School Administrators retirement dinner in honor of Dr. Fenner), I spoke very specifically to each group in honor of Dr. Fenner's eight years of service and her decision to retire from her position as principal of West District School. I also organized and implemented a very public recruitment and selection process leading to a June 19, 2000 recommendation to the Farmington Board of Education for a principal of West District School to replace the "retiring" current principal. Never during this period of January 2000 through June

2000 did Dr. Fenner ever mention a leave of absence, however, we did frequently discuss her "retirement plans."

We have great sympathy for Mr. Fenner, and we do not want his loss complicated by confusion over Dr. Fenner's status at the time of her death. As outlined above, Dr. Fenner resigned her employment effective July 1, 2000. Dr. Fenner never requested leave, and concomitantly neither the Board nor I granted Dr. Fenner a leave. Dr. Fenner's last paid day of employment was June 30, 2000. At the time of her retirement, Dr. Fenner had accrued sick days, and she would have been entitled to pay for those days, had she remained employed. However, Dr. Fenner never questioned the fact that her pay terminated at that time. Similarly, Dr. Fenner never questioned that she was obligated to contribute the entire cost for her health insurance benefits. Both these actions reflect her status at that time as a retired employee.

Please feel free to call if you have any other questions.

Sincerely,

Robert M. Villanova
Superintendent of Schools

RM:jlr
Encs.
cc: Thomas Mooney, Esq.

EXHIBIT D

## ARTICLE VIII
### GRIEVANCE PROCEDURE

A. <u>Definitions</u>

    1. A grievance shall be a complaint by an administrator that there has been a violation, misinterpretation or misapplication of a specific provision of this agreement and shall be subject to the grievance procedure and may be processed to arbitration (Level Four).

    2. An aggrieved person is the person or persons making this claim.

    3. A "party in interest" is the person or persons in the bargaining unit making the claim and any person who might be required to take action or against whom action might be taken in order to resolve the claim.

B. <u>Purpose</u>

    1. The purpose of this procedure is to secure, at the lowest possible administrative level, equitable solutions to grievances which may from time to time arise. Both parties agree that these proceedings shall be kept confidential within the parties of interest and their representative at each level of the procedure.

    2. Nothing herein contained shall be construed shall be construed as limiting the right of any administrator having a grievance to discuss the matter informally with any appropriate member of the administration.

C. <u>Time Limits</u>

Since it is important that a grievance be processed as rapidly as possible, the number of days indicated at each level should be considered as maximum and every effort should be made to expedite the process. The time limits specified may, however, be extended by

19

mutual agreement.

If an administrator does not file a grievance in writing within fifteen (15) calendar days after she/he first knew of the act or condition on which the grievance is based, then the grievance shall be considered to have been waived.

Failure by the administrator at any level to appeal a grievance to the next level within the specified time limit shall be deemed to be acceptance of the decision rendered at that level and such decision shall thereafter be binding upon the administrator and the Association. Failure by the administration to respond within the time limits at any level shall be deemed denial of the grievance and shall entitle the administrator to appeal to the next level.

D. <u>Special Conditions</u>

If any grievance arises from action or inaction on the part of a member if the administration at a level above immediate supervisor, the aggrieved person will submit such aggrievance in writing to the Superintendent and the Association directly and the processing of such grievance will be commenced at Level Two.

E. <u>Informal Procedure</u>

If an administrator feels that she/he may have a grievance, she/he shall first discuss the matter with her/his immediate supervisor within five (5) days after the incident in an effort to resolve the problem informally. In the case of a grievance commenced at Level Two, informal discussion shall take place with the Superintendent, with prior notification to the immediate supervisor of the aggrieved employee(s).

F. <u>Formal Procedure</u>

    1.   LEVEL ONE - IMMEDIATE SUPERVISOR

        If the administrator is not satisfied with the outcome of the informal procedure, she/he may present her/his claim to the immediate supervisor as a written grievance within fifteen (15) calendar days after she/he first knew of the act or

conditions upon which the grievance is based. The grievance shall be in writing and such writing shall specifically set forth the act or condition on which the grievance is based, the section of the contract alleged to be involved, and the remedy requested. Forms to be used in the grievance procedure are available in the principal's office. The immediate supervisor shall meet with the administrator and an Association representative within five (5) days after receipt or the written grievance. The immediate supervisor shall render her/his decision and the reasons therefore, in writing, to the administrator within five (5) days of the meeting with a copy to the Superintendent of schools and to the President of the Association.

2. LEVEL TWO - SUPERINTENDENT OF SCHOOLS

If the administrator is not satisfied with the disposition of her/his grievance at level one, she/he may, within five (5) days after the decision, file an appeal in writing to the Superintendent. Such writing shall set forth specifically the act or condition on which the grievance was based on Level One, the section of the contract alleged to be involved, its disposition at Level one, the grounds upon which the appeal is based, and the remedy requested.

The Superintendent or his designated representative shall meet with the administrator and an Association representative within ten (10) calendar days after receipt of the referral. The Superintendent or his representative shall give his decision in writing to the administrator and the President of the Association with three (3) days of the meeting with the administrator.

3. LEVEL THREE - BOARD OF EDUCATION

In the event the administrator is not satisfied with the disposition of her/his grievance at level two, she/he may within five (5) days after his decision, file a written grievance with the Chairman of the Board of Education. The grievance should specifically set forth the act or condition on

21

which the grievance was based in Level One and Level Two, the section of the contract alleged to be involved, its disposition at Level One and Two, the grounds upon which the appeal is based, and the remedy requested. The Board shall, within fifteen (15) days of receipt of the appeal, meet with the administrator and with a representative of the Association for the purpose of resolving the grievance.

The Board shall, within five (5) days of the meeting with the administrator, render its decision and the reasons therefore in writing to the administrator with a copy of the President of the Association.

4.    LEVEL FOUR - ARBITRATION

If the administrator is not satisfied with the disposition of her/his grievance at Level Three, she/he may, within three (3) days after receipt of the decision, request in writing to the Association, with a copy to the Board, that the grievance be submitted to binding arbitration.

The Association may, within five (5) days after receipt of such a request, submit the grievance to binding arbitration by so notifying the American Association in writing, with a copy to the Board.

Arbitration shall be conducted by the American Arbitration Association in accordance with its rules and procedures, unless otherwise agreed to by the Board and the Association.

The Association and the Board shall share equally the cost of the services of the arbitrator.

The arbitrator shall hear and decide only one grievance in each case. He/she shall be bound by and must comply with all the terms of this Agreement. He/she shall have no power to add to, delete from, or modify in any way any of the provisions of this Agreement.

EXHIBIT E

1 of 2 DOCUMENTS

Roger L. HILLER and Kenneth A. Hiller, Administrators of the Estate of Louis L. Hiller, deceased, Plaintiffs-Appellants, v. LIQUOR SALESMEN'S UNION LOCAL NO. 2, Popper-Morson Corporation and The American Distilling Company, Inc., Defendants-Appellees

No. 97, Docket No. 29030

UNITED STATES COURT OF APPEALS SECOND CIRCUIT

338 F.2d 778; 1964 U.S. App. LEXIS 3717; 57 L.R.R.M. 2629; 50 Lab. Cas. (CCH) P19,374

October 6, 1964, Argued
December 2, 1964, Decided

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff administrators sought review of the order of the United States District Court, which granted the motion of defendants, union, first employer, and second employer, for a stay pending arbitration. Plaintiffs filed suit alleged that plaintiffs' decedent was unlawfully discharged from his employment, that plaintiff was deprived of certain benefits, and that these actions were with the knowledge, consent, and connivance of defendant union.

**OVERVIEW:** Plaintiff administrators filed suit against defendants, union, first employer, and second employer, alleging that plaintiffs' decedent was unlawfully discharged from his employment, that he was unlawfully deprived of certain disability insurance and other benefits, that during his employment with defendant second employer he was paid less than the salary provided for in the collective bargaining agreement, and that defendant first employer coerced plaintiffs' decedent into accepting a compromise of certain rights to commissions and seniority rights and into signing a letter of resignation, all in violation of the collective bargaining agreement and all with the knowledge, consent, and connivance of defendant union. The district court granted defendants' motion for a stay pending arbitration. The court reversed. The amended complaint set forth a claim based upon denial by defendant union of the right of fair representation. The court held that where the employee's case was based upon a conspiracy between his union and his employer to deprive him of his rights, he could not be forced to submit that issue to an arbitration between the employer and the union.

**OUTCOME:** The court reversed the judgment of the district court granting the motion of defendants, union, first employer, and second employer, for a stay pending arbitration. The court held that the right of plaintiff administrators to sue on the claim on which they sought recovery could not be defeated by relegating them to an arbitration to which they did not agree where plaintiffs' case was based upon a conspiracy between decedent's union and employers.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*
[HN1] When it is alleged that an employer joins with the union to defraud the employee of his rights, both union and employer are liable.

**COUNSEL:** [**1]

Dora Aberlin, New York City, for appellants.

Victor Feingold, New York City, for appellee Union.

Simon Rosenzweig, William Rosenfeld, New York City, for appellee American Distilling Co., Inc.

338 F.2d 778, *; 1964 U.S. App. LEXIS 3717, **;
57 L.R.R.M. 2629; 50 Lab. Cas. (CCH) P19,374

Irving J. Seaver, Van Buren, Schreiber & Kaplan, New York City, for appellee, Popper-Morson Corp.

**JUDGES:**

Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.

**OPINIONBY:**

HAYS

**OPINION:**

[*779]

Plaintiffs are the administrators of the estate of Louis L. Hiller. The complaint in the action alleges, in effect, that Hiller was unlawfully discharged in 1959 from his employment with The American Distilling Company, Inc. and in 1960 from his employment with Popper-Morson Corporation, and that these discharges were with the knowledge, consent and connivance of the Liquor Salesmen's Union, Local No. 2, of which Hiller was a member in good standing, that Hiller was unlawfully deprived of certain disability insurance and other benefits, that during his employment by Popper-Morson, Hiller was paid less than the salary provided for in the collective bargaining agreement between Popper-Morson and the Union, that this was with the Union's knowledge, consent and connivance, that The [**2] American Distilling Company, Inc. coerced Hiller into accepting a compromise of certain rights to commissions and seniority rights, and into signing a letter of resignation, all in violation of the collective bargaining agreement and all with the knowledge, consent and connivance of the Union. The plaintiffs demand damages totalling $ 48,690.

In the district court, the defendants moved for a stay pending arbitration and their motion was granted. *226 F.Supp. 161 (1964)*. This was error.

However inartistically stated, the amended complaint seeks to set forth a claim based upon denial by the Union of the right of fair representation. See *Syres v. Oil Workers Int'l Union, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785*, reversing per curiam *223 F.2d 739 (5th Cir. 1955); Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Steele v. Louisville & N.R.R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944);* cf. *Ford Motor Co. v. Huffman, 345 U.S. 330, 337, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).* [**3] [HN1] When as is alleged here an employer joins with the union to defraud the employee of his rights, both union and employer are liable. See *Ford Motor Co. v. Huffman, supra; Steele v. Louisville & N. R.R., supra; Richardson v. Texas & N.O. R.R., 242 F.2d 230 (5th Cir. 1957); Central of Georgia Ry. v. Jones, 229 F.2d 648 (5th Cir.), cert. denied, 352 U.S. 848, 77 S.Ct. 32, 1 L.Ed.2d 59 (1956).*

It is true that the collective bargaining agreements contain arbitration clauses and that if this were simply a suit for wrongful discharge, the arbitration clauses would be available to the employers as a defense. *Larsen v. American Airlines, Inc., 313 F.2d 599 (2d Cir. 1963); Henderson v. Eastern Gas and Fuel Co., 290 F.2d 677 (4th Cir. 1961).* But where the employee's case is based upon a conspiracy between his union and his employer to deprive him of his rights he cannot be forced to submit that issue to an arbitration between the employer and the union. Such a procedure would fail completely to settle the issues between the union member and his union. It would entrust representation of the employee to the [**4] very union which he claims refused him fair representation, and it would present as adversaries in the arbitration procedure the two parties who, the employee claims, are joined in a conspiracy to defraud him.

That Judge Bryan had misgivings along the lines we have indicated is evidenced by his having included in his order provision for the plaintiffs to have separate representation at the arbitration and a voice in choosing the arbitrator. However, this arrangement fails to cure the defects, since the plaintiffs would still be aligned on the side of their adversary the union or, if not, the order would have to be construed as forcing the plaintiffs to arbitrate issues with employer [*780] and union which neither they nor their decedent ever agreed to arbitrate.

The plaintiffs' right to sue on the claim on which they seek recovery cannot be defeated by relegating them to an arbitration to which they have not agreed.

Reversed.