UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALISTAIR GOODMAN | : |
| NICHOLAS GOODMAN | : |
| JAMES FENNER, | : |
|     Plaintiffs, | : |
| | : |
| v. | :    Civil Action No. 3:01cv1609(CFD) |
| | : |
| TOWN OF FARMINGTON | : |
| BOARD OF EDUCATION | : |
|     Defendant. | : |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Alistair and Nicholas Goodman and James Fenner brought this action against the Town of Farmington Board of Education seeking recovery of the proceeds of decedent Dr. Marilyn Fenner's life insurance policy.[1]  Alistair and Nicholas Goodman were the sons of Dr. Fenner; Mr. Fenner was her husband, and executor of her estate.  Plaintiffs claim that the Town of Farmington Board of Education ("Board") breached the terms of the Collective Bargaining Agreement between the Board and the Farmington Administrators' and Supervisors' Association ("FASA"), that the Board violated Connecticut's Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(1), and that the Board violated the Family and Medical Leave Act, 29 U.S.C. § 2611 *et. seq.*

This case was originally brought in the Connecticut Superior Court, but was removed to this Court pursuant to 28 U.S.C. § 1441.  Pending is the Board's motion for summary judgment. For the following reasons, that motion is **GRANTED** in part.  Because it has disposed of

---

[1] The plaintiffs also sued Kevin Deneen, attorney for the Farmington Administrators' and Supervisors' Association, who has since settled that claim with the plaintiffs.

plaintiffs' FMLA claim, the only federal claim before it, the Court declines to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims.  See 28 U.S.C. § 1367(c)(3).  Both the Second Circuit and the Supreme Court agree that when all federal claims are dismissed, the "state claims should be dismissed as well." Lanza v. Merrill Lynch & Co., 154 F.3d 56, 61 (2d Cir. 1998) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).[2]

**I. Background**

Dr. Marilyn Fenner was hired by the Town of Farmington Board of Education in 1992 to become the principal of the West District School.  The Board had a collective bargaining agreement ("CBA") with the Farmington Administrators' and Supervisors' Association.  As a principal, Dr. Fenner was a beneficiary of that collective bargaining agreement, which provided that life insurance for administrators would be provided by the Board.

In November 1999, Dr. Fenner was diagnosed with a malignant brain tumor.  At that time she was told by her neurosurgeon that she had less than one year to live, assuming she was treated with surgery, radiation, and chemotherapy.  Shortly thereafter, Dr. Fenner informed the Superintendent of Schools for the Board of her terminal illness.  A month later, Dr. Fenner underwent brain surgery.  She returned to her employment in January 2000.  On February 29, 2000, Dr. Fenner informed her staff that she would not return as principal the following school year.  On that day, she also sent a letter to the parents of West District School students

---

[2]This is particularly true when, as here, there are substantial issues of state law that have not yet been resolved by the state's highest appellate court.  In this case, for example, the parties recently have disputed the application of Conn. Gen. Stat. § 38a-456 (requiring notice by employers of termination of life insurance) to municipalities.

announcing that "this will be my last year as principal of West District School." (56(a)(1) Statement, ¶ 14). Dr. Fenner died on December 17, 2000.

Through a June 13, 2000 letter, Board Personnel Supervisor Amy Barret informed Dr. Fenner that she would be responsible for the payments on the premiums of her health insurance after her retirement. No similar notice was provided concerning the life insurance coverage. A week after Barret's letter, Dr. Fenner applied for disability benefits from the State of Connecticut Teachers' Retirement Board ("Retirement Board"). Her application was accepted, and she began receiving disability payments from the Retirement Board as of July 1, 2000. Mr. Fenner also began making monthly payments after July 1 on his wife's health insurance premiums. The balance of the health insurance premiums were paid by the Retirement Board.

After July 2000, Dr. Fenner no longer served as the West District School's principal. She did not pay union dues, or receive a salary from the Board. Dr. Fenner did not indicate to the Board, either orally or in writing, that she was seeking leave under the Family and Medical Leave Act prior to her death in December.

Dr. Fenner's life insurance policy through the CBA provided that coverage would terminate when she retired, the date her employment was terminated, or the date she was no longer "Actively at Work". (Defendant's Ex. D, p. 7). Although there were provisions in the life insurance policy for conversion to an individual policy if employment terminated, Dr. Fenner did not take the necessary steps for that conversion.

After Dr. Fenner died, her sons (who were the beneficiaries of her life insurance policy) were unable to collect the proceeds because at the time of her death she was no longer covered by that policy. This suit followed.

**II. Summary Judgment Standard**

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

**III. Discussion**

In Count Three of their second amended complaint, plaintiffs allege that the Board violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et. seq.*, by not

continuing Dr. Fenner's life insurance coverage. The Board moves for summary judgment, arguing that (1) the FMLA does not provide any relief to the plaintiffs because Dr. Fenner never requested leave under the FMLA, (2) Dr. Fenner was not an "eligible employee" as defined by the FMLA, and (3) any leave under the FMLA would have expired before her death. Plaintiffs appear to argue that, under the protections of the FMLA, the Town should have maintained the life insurance policy during Dr. Fenner's illness after she began receiving state disability payments on July 1, 2000. Although they concede that Dr. Fenner did not file a specific notice of a claim under the Family and Medical Leave Act, plaintiffs argue that the Board's knowledge of her application for state disability was tantamount to receiving such notice.

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1)(D).[3] The employee "shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave . . . except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall

---

[3] The Court notes that the FMLA requires an employer to maintain an employee's group health insurance coverage while that employee is on leave. See 8 C.F.R. § 825.209(a) ("During any FMLA leave, an employer must maintain the employee's coverage under any group health plan . . . on the same conditions as coverage would have been provided if the employee had been continuously employed during the entire leave period.") An employer is not, however, required to maintain an employee's life insurance coverage. See 8 C.F.R. § 825.209(h) ("An employee's entitlement to benefits other than group health benefits during a period of FMLA leave . . . is to be determined by the employer's established policy for providing such benefit when the employee is on other forms of leave (paid or unpaid, as appropriate)." In this case, the Board's policy regarding premium payments on employee life insurance policies during FMLA leaves is unknown. However, the outcome of this summary judgment ruling is not affected by this question.

provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B).  The regulatory interpretations of the FMLA notice requirement provide that "an employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).  Notice by an employee does not need to specifically or expressly reference the FMLA.  <u>Id</u>.  The regulations further state that, "If an employee gives unequivocal notice of intent not to return to work, the employer's obligation under the FMLA to maintain health benefits (subject to COBRA requirements) and to restore the employee cease.  However, these obligations continue if an employee indicates he or she may be unable to return to work but expresses a continuing desire to do so." 29 C.F.R. § 825.309(b).

      Although plaintiffs concede that Dr. Fenner never specifically requested leave pursuant to the FMLA (56(a)(2) Statement ¶ 38 and deposition of James Fenner at 38-40), the Court will consider whether adequate informal notice was given in accord with the provisions of the FMLA regulations.

      Before undergoing brain surgery in December 1999, Dr. Fenner discussed her medical condition and its impact on her work with the Superintendent of Schools.  After returning to work in January 2000, she also informed her staff and the school community that she would not be able to continue as principal of the West District School the next school year.  The following summer, Dr. Fenner applied for state disability benefits from the Retirement Board and began receiving such payments from the state—not the Board.  After July 1, 2000, Dr. Fenner received no salary from the Board.  Although plaintiffs argue otherwise, there is no indication that Dr. Fenner's application for disability benefits, as well as her other actions, indicated anything other

than she intended to leave her employment with the Board permanently.[4]  The plaintiffs have failed to raise a genuine issue of material fact that Dr. Fenner ever indicated that this would be a temporary leave, which might trigger the protections of the Family and Medical Leave Act.

In addition, employers such as the Board are entitled to some notice that an employee is invoking the protections of the FMLA.  Dr. Fenner gave no such indication.  Although 29 C.F.R. § 825.303 provides that employees need not expressly assert their requests under the FMLA, "employers still are entitled to the sort of notice that will inform them not only that the FMLA may apply but also when a given employee will return to work."  Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001).  There is no genuine issue of material fact here that Dr. Fenner or her family indicated in any way that she was seeking leave under the FMLA.

Finally, even if Dr. Fenner had invoked the protections of the FMLA, it would not provide the relief the plaintiffs seek here.  The twelve weeks of leave authorized by the Act would have expired before Dr. Fenner's unfortunate death.  Thus, any obligation imposed by the FMLA on the Board to continue paying the premiums on the life insurance policy would also have expired.

Therefore, the Board's motion for summary judgment is **GRANTED** as to plaintiffs'

---

[4] Plaintiffs allege in their statement of material facts that "In March of 1999, Dr. Fenner had a meeting with Superintendent Villanova to discuss the terms and conditions of her transition from being principal of West District School to some other status." (Plaintiffs' counter-statement of material facts, ¶ 2).  The Court notes that in the statement above, plaintiffs use of '1999' rather than '2000' is a typographical error.  This allegation is apparently based on Mr. Fenner's deposition.  Because Mr. Fenner was not present for the meeting, that evidence of Dr. Fenner's statements at that meeting are inadmissible hearsay and cannot be considered for the purposes of summary judgment.  Moreover, Mr. Fenner concedes that he was not told by his wife of any such statements made by her at the meeting. (Deposition of James Fenner, at 64-65).

FMLA claim.

**IV. Conclusion**

The motion for summary judgment [doc. # 40] is **GRANTED** in part. The clerk is directed to close this case.

SO ORDERED this __6th__ day of December, 2005 at Hartford, Connecticut.

/s/ CFD
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**