UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALISTAIR GOODMAN<br>NICHOLAS GOODMAN<br>JAMES FENNER<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>TOWN OF FARMINGTON<br>BOARD OF EDUCATION<br><br>　　　　　　　　Defendant. | :<br>:<br>:<br>:<br>: CIVIL ACTION NO.<br>: 3:01-CV-01609 (CFD)<br>:<br>:<br>:<br>:<br>:<br>: NOVEMBER 5, 2004<br>:<br>: |

**SECOND AMENDED COMPLAINT**

**First Count**: (Breach of Contract)

1. As of December 17, 2000 and at all relevant times hereto, Marilyn Fenner was an employee-administrator of the Town of Farmington Board of Education (hereinafter "Farmington").

2. Plaintiff James Fenner is the Executor of the Estate of Marilyn B. Fenner.

3. Plaintiffs Nicholas Goodman and Alistair Goodman are the named beneficiaries of the hereinafter referred to term life insurance contract relating to Marilyn Fenner's life.

4. As an employee-administrator of Farmington, Marilyn Fenner had certain rights under the applicable collective bargaining agreement between the Farmington administrators and Farmington.

5. Among such rights under the applicable collective bargaining agreement was the right to have term life insurance on her life, the premium of which was to be fully borne by the defendant.

6. Until July 1, 2000, Farmington caused term life insurance to be in force and effect on the life of Marilyn Fenner in accordance with the terms of the applicable collective bargaining agreement.

7. Farmington provided said term life insurance with a policy of insurance from Sun Life Assurance Company of Canada (the "Sun Life Policy").

8. The terms of the Sun Life Policy were thereby incorporated into said collective bargaining agreement.

9. Starting on or about July 1, 2000 and continuing thereafter, Farmington failed to pay the premium required for maintenance of the Sun Life Policy on the life of Marilyn Fenner and otherwise failed to keep in force any term life insurance on the life of Marilyn Fenner.

10. Marilyn Fenner died on December 17, 2000.

11. Farmington breached the covenant under the collective bargaining agreement relative to maintaining term life insurance for the benefit of Marilyn Fenner.

12. Defendant Farmington further breached its responsibility under the collective bargaining agreement (and the extant term life insurance agreement) by taking the action of terminating its premium payment of term life insurance for Fenner <u>and not notifying</u> Fenner of either its intention to terminate premium payments or the actual termination of the same.

13. The collective bargaining agreement contains an implied covenant of good faith and fair dealing by Farmington.

14. Defendant Farmington breached the covenant of good faith and fair dealing by negligently performing its responsibilities under the collective bargaining agreement in not notifying Fenner of its terminating payment of term life insurance premiums.

15. As a direct consequence of Farmington's failure to notify Fenner of said action of discontinuance of premium payments, Fenner was deprived of two basic rights under said collective bargaining agreement and under the Sun Life Policy (see Exhibit A affixed hereto, the explanatory brochure for the Sun Life Policy): (a) the right to request the Board of Education to continue to make payments for up to 12 calendar months (as provided on pages 7 and 8 of said explanatory brochure); and (b) the right to timely convert the Sun Life Policy to an individual policy as provided on pages 14, 15, and 16 of the said explanatory brochure.

16. As an additional consequence of Farmington's failure to notify Fenner of said action of discontinuance of premium payments, Fenner was deprived of the timely opportunity to grieve the above referenced actions of Farmington.

17. Plaintiffs Nicholas Goodman and Alistair Goodman have suffered damages as a result of the cancellation of said policy by Farmington without timely notification to Marilyn Fenner.

3

**Second Count**: (Violation of C.G.S. §§ 46a-60(1))

1-9. Paragraphs 1 through 9 of the First Count are incorporated herein and made paragraphs 1 through 9 of this the Second Count.

10. On or about November, 1999, Marilyn Fenner not only learned that she had an incurable cancerous brain tumor with median life expectancy of less than one year, but so informed the Farmington Superintendent of Schools shortly thereafter.

11. Section 46a-60(a) of the C.G.S. provides as follows:

"It shall be a discriminatory practice in violation of this section: (i) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to, blindness;".

12. As of July 1, 2000, Marilyn Fenner had a "physical disability" within the meaning of Section 46a-60(a)(1).

13. On June 22, 2000, Marilyn Fenner applied for disability benefits provided under the State of Connecticut, Teachers Retirement Board.

14. Farmington not only was aware of such application for disability benefits but supported the same.

15. On or about July 27, 2000, Marilyn Fenner was notified that "the Medical Review Committee of the Teachers' Retirement Board" had approved her application for disability benefits.

16. At no time did Marilyn Fenner retire or voluntarily terminate her employment status with Farmington.

17. At no time was Marilyn Fenner terminated by Farmington from her position as a school administrator.

18. Because Marilyn Fenner had applied for and was receiving or was eligible to receive disability income from the Teachers Retirement Board, Farmington treated her as having retired or as having resigned and terminated her term life insurance coverage.

19. Marilyn Fenner died on December 17, 2000.

20. In January, 2001, after Marilyn Fenner had died, her estate learned that Farmington had terminated her term life insurance coverage.

21. The termination of Marilyn Fenner's term life insurance coverage by Farmington violated the provisions of Section 46a-60(a)(1) C.G.S.

**Third Count**: (Violation of the Federal Family Medical Leave Act – 29 U.S.C. 2611, et seq.)

1,- 6. Paragraphs 1 through 6 of the First Count are incorporated herein and made paragraphs 1 through 4 of this the Third Count.

7. At all relevant times hereto Marilyn Fenner was an "eligible employee" and was suffering from a "serious health condition" within the meaning of the "Family and Medical Leave Act", 29 U.S.C. 2611, et seq.

8. On or about June 22, 2000, Marilyn Fenner was eligible for medical leave from Farmington.

9. On or about June 22, 2000, Marilyn Fenner applied for medical leave as well as disability benefits that are provided under the State of Connecticut Teachers' Retirement Board.

5

10. Marilyn Fenner's application to the State of Connecticut Teachers' Retirement Board for medical leave and benefits was consistent with and equivalent to Marilyn Fenner's exercise of rights under Section 29 USC 2612.

11. Farmington not only was aware of Marilyn Fenner's application for medical leave and application for disability benefits but in fact supported the same.

12. On or about July 27, 2000 Marilyn Fenner was notified that "the Medical Review Committee of the Teachers' Retirement Board" had approved her application for disability benefits.

13. At no time did Marilyn Fenner retire or voluntarily terminate her employment status with Farmington.

14. As of June 22, 2000 Marilyn Fenner was on medical leave from her position with Farmington.

15. On or about July 1, 2000 Farmington failed to pay the premium required for maintenance of the term life insurance policy on the life of Marilyn Fenner and otherwise failed to keep in force term life insurance on the life of Marilyn Fenner.

16. Marilyn Fenner died on December 17, 2000.

17. In terminating Marilyn Fenner's term life insurance coverage, starting on or about July 1, 2000, Farmington violated specific provisions of the federal Family and Medical Leave Act; more specifically, Section 29 U.S.C. 2615 which is entitled "Prohibited Acts" and which states in pertinent part: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or

the attempt to exercise any right provided under this title" as well as the provisions of Section 29 U.S.C. 2614 which provide in pertinent part: "the taking of leave under Section 102 (29 U.S.C. 2612) shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced."

**Fourth Count:**

During the period July 1, 1999 through June 30, 2000

1.  Marilyn Fenner was a Farmington School Principal and as such a member of a collective bargaining unit known as the Farmington Administrators' and Supervisors' Association.

2.  During the aforesaid period of time the collective bargaining unit known as the Farmington Administration and Supervisors' Association was represented by Attorney Kevin M. Deneen of Windsor, Connecticut.

3.  In November of 1999, Marilyn Fenner was diagnosed as having a cancerous brain tumor.

4.  On or about April, 2000, Marilyn Fenner, her husband, James Fenner and School Superintendent Robert Villanova had a meeting and engaged in preliminary discussions concerning action to be taken relative to Marilyn Fenner's benefits as a school administrator.

5.  At said meeting it was mutually agreed that the aforesaid three individuals (Marilyn Fenner, James Fenner and Robert Villanova) would meet again to consider resolution of Marilyn Fenner's benefits as a Farmington administrator once Marilyn Fenner had consulted with and been advised by an attorney.

7

6.  Shortly thereafter in May, 2000, Marilyn Fenner, together with her husband, James Fenner, consulted with Attorney Kevin M. Deneen about Marilyn Fenner's medical condition and the options available to Marilyn Fenner in pursuing all her rights and benefits as a Farmington School Administrator. Attorney Deneen committed to give advice to James Fenner and Marilyn Fenner about Marilyn Fenner's employment benefits generally and more specifically to give advice as to the following:

(a) Marilyn Fenner's health benefits;

(b) Marilyn Fenner's vacation and sick leave benefits for the July 1, 2000 through June 30, 2001 school year;

(c) Marilyn Fenner's right to obtain disability pay during the course of her disability;

(d) Marilyn Fenner's right to continue to have term life insurance coverage;

(e) such other employment benefits as Marilyn Fenner might have – including but not limited to what future status or position with the Farmington school system, Marilyn Fenner might request from the Superintendent of Schools when she and James Fenner followed up with the plan to discuss the future plans and benefits due Marilyn Fenner.

7.  At said time, Attorney Kevin M. Deneen agreed to give legal advice to Marilyn Fenner about how to protect all her rights and benefits as a Farmington school administrator and stated to Marilyn Fenner and to James Fenner that he would review Marilyn Fenner's situation and get back to them with advice.

8. During the month of June, 2000, Attorney Kevin M. Deneen did in fact get back to Marilyn Fenner and James Fenner with some limited advice.

9. Notwithstanding, other than by sending a letter dated June 21, 2000 to Marilyn Fenner and James Fenner, Attorney Kevin M. Deneen wholly failed to consider and give advice to Marilyn Fenner and James Fenner on a broad range of subjects – including but not limited to: how to handle the issue of continuation of term life coverage under the Farmington school system policy.

10. During the period June to October, 2000, James Fenner repeatedly and often called Attorney Kevin M. Deneen to obtain advice as to what Marilyn Fenner should do relative to protecting all her employment rights, but Attorney Kevin M. Deneen never returned any of James Fenner's calls nor tendered any advice except for a letter he sent to James Fenner and Marilyn Fenner dated June 21, 2000.

11. Attorney Kevin M. Deneen was professionally negligent in the following respects:

(a) in failing to return any of the phone calls made by James Fenner on Marilyn Fenner's behalf during the period June 1 to October, 2000;

(b) in failing to give Marilyn Fenner any advice about how to protect her specific employment benefit of term life insurance;

(c) in failing to prepare Marilyn Fenner and/or James Fenner for a prospective follow-up meeting with Superintendent of Schools Robert Villanova relative to pursuing and/or securing all of Marilyn Fenner's employment rights, including but not limited to maintaining term life insurance.

9

12. As a proximate result of the professional negligence of Attorney Kevin M. Deneen, Marilyn Fenner and Marilyn Fenner's estate lost the benefit of term life insurance.

Wherefore, plaintiffs demand the following relief:

1. Money damage;

2. Interest from December 17, 2000 to date;

3. Punitive damages; and

4. Attorney's fees.

Respectfully Submitted,
PLAINTIFFS

By: *(signature)*

David B. Beizer, Esq.  (ct06161)
Beizer & Weintraub
Their Attorneys
345 North Main Street
West Hartford, CT  06117
(860) 236-5491

## CERTIFICATION

This is to certify that a copy of the foregoing was sent this 5th day of November, 2004, via first class mail, postage prepaid, to:

Louis B. Blumenfeld, Esq.
Cooney, Scully and Dowling
Hartford Square North
Ten Columbus Boulevard
Hartford, Connecticut 06106

Alexandria L. Voccio, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut 06114-1190

_____
David B. Beizer
Commissioner of Superior Court

Goodman Second Amendment to Complaint